TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00780-CR






Aubrey Lubojasky, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT

NO. D-1-DC-09-600001, THE HONORABLE BRENDA KENNEDY, JUDGE PRESIDING



 

M E M O R A N D U M O P I N I O N

 

 Appellant Aubrey Lubojasky was convicted by a jury of one count of continuous
sexual abuse of a young child and two counts of indecency with a child by exposure. See Tex. Penal
Code Ann. §§ 21.02, 21.11(a)(2) (West 2011). The jury assessed his punishment at 60 years'
imprisonment for the continuous-sexual-abuse count and ten years' imprisonment for each of the
indecency counts. See id. §§ 12.34, 21.02(h) (West 2011). On appeal, appellant complains about
the exclusion of evidence of a prior false accusation of sexual abuse made by the victim's mother,
the exclusion of evidence showing alternative sources for the victim's sexual knowledge, the
admission of expert psychological testimony, the admission of hearsay statements of the victim and
her mother, and the admission of pornographic digital evidence in the punishment phase. For the
reasons that follow, we affirm the judgments of conviction.



BACKGROUND

 The jury heard evidence that appellant was Rene's fiancé and had been living with
Rene and her three children in her two bedroom apartment for about two years. (1) On the morning of
January 13, 2009, just after 7:00, Rene walked into her living room where she observed appellant
sitting next to her eight-year old daughter, J.B., who was lying down on the pull-out couch. (2) At her
interruption, appellant jumped up but did not turn to face her. At this point, Rene saw her daughter
sit up, reach beside her, grab her panties, and pull her knees to her stomach to put them on. Rene
then saw her Kodak digital camera in appellant's hand. According to Rene, appellant told her "it's
not what you think" and explained that he was just helping J.B. get dressed for school. It was
unusual for appellant to help J.B. to dress and Rene did not see any of J.B.'s school clothes in the
living room. Further, when Rene requested the camera from appellant he refused to give it to her
and walked out of the house with it.

 Rene questioned her daughter about what happened. J.B. told her that appellant had
been taking pictures of her. J.B. also revealed that appellant had touched her and disclosed that this
was not the first time. Rene immediately told J.B. to dress so she could take her to the doctor. 
Appellant accompanied them to the pediatrician's office. (3) J.B.'s pediatrician testified at trial. She
said that she saw J.B. and her mother at approximately 8:30 that morning, briefly discussed what had
happened with them, but did not examine J.B. Instead, she referred J.B. and her mother to Dell
Children's Medical Center for a sexual assault exam. The doctor notified the children's hospital that
Rene and J.B. were on the way and called the police to report the sexual abuse of J.B.

 A sexual assault nurse examiner (SANE) at Dell examined J.B. The nurse noticed
redness and tenderness on J.B.'s labia minora, but noted no acute trauma. She testified at trial that
these findings were not inconsistent with a sexual assault as there is rarely physical evidence of
trauma in these types of cases. The nurse did not detect any secretions, such as semen, during the
exam but obtained evidentiary samples for testing. A DNA forensic scientist testified at trial that
a small amount of male DNA was detected on J.B.'s vaginal swab and dried secretion vaginal debris
swab. Additional DNA testing yielded a partial DNA profile from the vaginal swab. Appellant
could not be excluded as a contributor to this DNA.

 After the exam at the hospital, the police asked Rene to take J.B. to the children's
advocacy center so J.B. could be interviewed by a forensic interviewer. At trial, the forensic
interviewer testified that J.B. told him that she was there because her dad, referring to appellant, was
"wiggling" his "private part" in front of her. J.B. identified the "private part" with the name
"weiner" and explained that it is the body part used to go to the bathroom and "pee" comes out of
it. She also demonstrated the "wiggling" motion by moving her hand back and forth on the arm of
a chair. (4) J.B. also told the interviewer that appellant was videotaping with a camera--a grey camera
with the name "Kodak" on it--while he was wiggling his private part in front of her. She told him
that the incident happened that morning while they were on the "couch bed." She said that appellant
jumped when her mom walked in the room. J.B. reported that such activity had been happening "for
a very long time."

 She told the interviewer that the first time was when she was seven years old and in
the second grade. (5) She described appellant pulling down his pants, putting her on top of him, putting
his private part inside her private part, and moving her body back and forth with his hands on her
hips. She said that appellant put lotion that he got from the bathroom on his private part to make it
go inside her private part. J.B. also told the interviewer that appellant made her put her mouth on
his private part and that he put "stuff" on it "like marshmallows and cream." She reported that
"stuff" came out of his "wiener" the time she put her mouth on it and got on her clothes. The
interviewer testified that J.B. said that appellant recorded her many times and put the recordings on
the computer. She told him that all the abuse happened after school except the wiggling incident that
morning. She indicated that the abuse had been going on through the winter. J.B. said that appellant
had told her not to tell because he did not want anybody to know what happened.

 After leaving the children's advocacy center, Rene returned home where she met law
enforcement officers and consented to a search of the apartment. The police photographed the
apartment and the couch bed where Rene caught appellant with her daughter and searched the
apartment for physical evidence. They removed several items which were later processed by forensic
analysts, including the Kodak camera appellant had in his hand when Rene discovered him with J.B. (6)

 A computer forensics analyst testified about the forensic examination he performed
on the Kodak camera. Using specialized software, the analyst accessed two videos that had been
deleted from the memory card in the camera. Based on time stamp comparisons, the analyst testified
that these videos were created the morning of January 13, 2009, approximately five seconds apart. 
These videos showed the body of a slight, prepubescent white female, similar to the build of J.B. 
They also showed a man's exposed penis and the child's sexual organ. There was an adult male
hand in the videos wearing a linked men's bracelet with alternating black and silver colors,
consistent with a bracelet taken from appellant by law enforcement on his arrest. One of the
detectives who had searched the apartment testified that the bedding in the videos, including red and
blue pillows, was consistent with the bedding taken from the couch bed in the apartment where the
appellant lived and shown in several of the photographs of the apartment.

 J.B. testified at trial consistently with the information she had conveyed to her mother,
her pediatrician, the SANE nurse, and the forensic interviewer at the child advocacy center. She
testified that appellant, whom she called "daddy," "had sex with [her]," meaning that "he got on top
of [her] and started going back and forth." Sometimes she had clothes on and sometimes she did not. 
J.B. testified that sometimes they sat up facing each other with her legs on the outside and
appellant's hands on her hips. She described seeing appellant's "private part" and indicated that it
had touched her "private part" and went inside her "private part." The record reflects that J.B.
demonstrated the difference between inside and outside using a Kleenex box. She said it felt
"hurtful" to her body and "heartbroken" to her emotions when appellant put his private part inside
her private part.

 J.B. told the jury that the abuse happened more than one time and by the time her
mother found out in January 2009, it had been happening for "a very long time." Her testimony
indicated that the abuse started before Halloween because she remembered pumpkin decorations and
pumpkin lights decorating the apartment when it first happened. The abuse took place in the living
room of her house while her mom was at school and her brothers were playing in their room. (7) While
appellant was with J.B., her brothers were not allowed to come out of their room. J.B. testified that
appellant would give her special treats after he had sex with her, such as candy, ice cream, or a
drink, and told her not to tell anybody about the abuse. J.B. testified that on the morning of
January 13, 2009, appellant was "shaking" his "private" in front of her and taking pictures of that. 
She said that he had taken "bad pictures" of her before. When her mother walked in and found her,
J.B. was "scared, worried, and happy"--happy because she "wouldn't have to live with it anymore."

 Appellant testified at trial. He said that he "loved [J.B.] as [his] own daughter" and
that he had a daughter the same age. He denied ever touching J.B. and said there was "no way
possible [he] could ever do that to a child." After initially testifying that he never used the camera
or the computer in the apartment, he conceded on cross-examination that he occasionally used both. 
Appellant testified that on the morning of January 13, 2009, he awoke to Rene yelling at the children
to get ready for school. He said that J.B. was moving slowly, so he helped her get dressed. He said
that when Rene entered the living room, J.B. was wearing her jeans and a t-shirt, but Rene began
making accusations. He said that after accompanying Rene and J.B. to the pediatrician's office, he
left Dell Children's Hospital on foot because he got fed up with the accusations being made against
him. Appellant opined that Rene "put [J.B.] up to this . . . to punish [him] for leaving her or pay her
[sic] back for whatever she felt [he] did wrong against her, not being faithful, leaving her and never
coming back to her." He told the jury that Rene was capable of setting him up--bribing J.B. to get
her to tell lies about him and faking a video by getting a second bracelet and giving it to someone
else to pretend to be him in the videos.

 The jury convicted appellant of one count of continuous sexual abuse of a young child
and two counts of indecency with a child by exposure. (8) During the punishment phase, the computer
forensics analyst testified about additional digital evidence recovered from the desktop computer and
electronic storage devices taken from the apartment. The jury assessed appellant's punishment at
confinement for 60 years in the Institutional Division of the Texas Department of Criminal Justice
for the continuous-sexual-abuse-of-a-young-child count and ten years for each of the indecency
counts. The trial court ordered the sentences to run concurrently. This appeal followed.


DISCUSSION

 In five points of error, appellant argues that the trial court erred by: (1) excluding
evidence of a prior false allegation of sexual abuse made by J.B.'s mother, (2) excluding evidence
of alternative sources for J.B.'s sexual knowledge, (3) admitting the expert testimony of a
psychologist, (4) admitting hearsay statements of J.B. and her mother, and (5) during the punishment
phase of trial, admitting pornographic digital evidence.


Exclusion of Evidence

 Appellant's first two points of error relate to the trial court's exclusion of evidence. 
In his first point of error, appellant contends the trial court erred by refusing his request to question
Rene, J.B.'s mother, regarding prior false allegations against her ex-husband concerning his sexual
abuse of her and her children. He contends that the trial court's limitation of his cross-examination
of Rene denied him his constitutional right of confrontation and violated Rule 613(b) of the Texas
Rules of Evidence. In his second point of error, appellant asserts that the trial court erred in
excluding evidence demonstrating alternative sources for J.B.'s sexual knowledge. Appellant
appears to argue that the exclusion of this evidence violated his constitutional right of confrontation
and right to due process.


Preservation of Error

 An appellate issue involving a proffer of evidence, as opposed to an objection, must
still satisfy the preservation-of-error requirements. Reyna v. State, 168 S.W.3d 173, 179 (Tex. Crim.
App. 2005) (stating that purpose of requiring objection is to give trial court or opposing party
opportunity to correct error or remove basis for objection and reasoning that "[a]though this case
involves a proffer of evidence rather than an objection, the same rationale applies."). To preserve
error regarding the exclusion of evidence, a party must not only tell the judge that the evidence is
admissible, but must also explain why it is admissible. Id. at 177-79. Further, the explanation given
at trial must match the one urged on appeal. Id. at 179. For example, an explanation for
admissibility based upon the Rules of Evidence at trial does not preserve a claim on appeal that
admission of the evidence is required by the Confrontation Clause. Id.

 At trial, when appellant sought to question Rene about the alleged prior false sexual-abuse allegations, he merely indicated to the trial court that he "would also like to get into prior false
accusations." At the time of his request he did not offer any legal basis for the admission of such
evidence. Nor did he offer one after a subsequent offer of proof. This Court does not require certain
"technical considerations or forms of words to preserve an error for appeal . . . ." See Resendez
v. State, 306 S.W.3d 308, 312-13 (Tex. Crim. App. 2009). Clear communication in plain English,
rather than "hyper-technical or formalistic . . . words or phrases," is sufficient to preserve error. 
Pena v. State, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting Lankston v. State, 827 S.W.2d
907, 908-09 (Tex. Crim. App. 1992)). However, "it is not enough to tell the judge that [the]
evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge
why the evidence was admissible." Reyna, 168 S.W.3d at 177 (emphasis added). Here appellant
offered no basis for the admission of this testimony. He did not cite to any specific rules of evidence,
case law, or constitutional provisions, state or federal, to support admission of the excluded
testimony.

 Yet, on appeal, appellant contends that he should have been allowed to question Rene
pursuant to Rule 613(b) of the Texas Rules of Evidence. See Tex. R. Evid. 613(b) (permitting
examination of witness concerning bias or interest). He further argues that the restriction on cross-examination violated his constitutional right of confrontation. See U.S. Const. amends. VI, XIV. 
At trial appellant did not request to proceed under Rule 613(b) or assert that the court's refusal to
allow him to question Rene on this topic improperly limited his right to cross-examine the witness
to expose bias or interest under that rule. Nor did appellant assert at trial that the limitation of
cross-examination violated his constitutional right to confront witnesses. Accordingly, appellant did
not preserve for appellate review his complaints regarding the exclusion of the evidence of prior
false accusations of sexual abuse.

 In addition, when the trial court refused to allow appellant to offer evidence of the
purported alternative sources of J.B.'s sexual knowledge, appellant never argued that admission of
the evidence was required by any constitutional provision. The only rationale for offering the
evidence was that the State had "opened the door" to such evidence in its opening statement. (9) 
Appellant did not argue that either the Sixth or Fourteenth Amendment to the United States
Constitution demanded admission of this evidence. Because appellant did not clearly articulate that
these constitutional provisions supported admission of the testimony, the trial court never had the
opportunity to rule on this rationale. Appellant did not do everything necessary to bring to the
judge's attention the evidence rule or statute or constitutional provision in question and its precise
and proper application to the evidence in question. See Reyna, 168 S.W.3d at 179; see also
Anderson v. State, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (concluding defendant's
constitutional right to confrontation and to present defense are subject to procedural default). 
Accordingly, appellant failed to preserve for appellate review his complaint regarding the exclusion
of the evidence of alternative sources for the victim's sexual knowledge.

 Nevertheless, even if error had been preserved, appellant's claims would fail.


Standard of Review

 We review a trial court's ruling on the admission or exclusion of evidence for an
abuse of discretion. Tillman v. State, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court
abuses its discretion only if its decision "lies outside the zone of reasonable disagreement." Martinez
v. State, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), cert. denied, 131 S.Ct. 2966 (2011);
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We consider the
ruling in light of what was before the trial court at the time the ruling was made and uphold the
trial court's decision if it lies within the zone of reasonable disagreement. Billodeau v. State,
277 S.W.3d 34, 39 (Tex. Crim. App. 2009).



Prior False Accusation of Sexual Abuse

 In his first point of error, appellant argues that the trial judge erred in excluding
evidence of a "prior false accusation" of sexual abuse during the cross-examination of Rene, J.B.'s
mother. He maintains that the exclusion of this evidence violated his constitutional right to
confrontation as well as Rule 613(b) of the Texas Rules of Evidence.

 Prior to cross-examination of Rene, after the State passed her as a witness, appellant's
counsel approached the bench pursuant to a motion in limine and expressed to the court that he
"would like to get into prior false accusations." The court denied his request, finding no basis for
the admission of such evidence, but allowed him to make an offer of proof at the conclusion of
Rene's testimony. During the offer of proof, appellant's counsel proffered the following:


 Q. And so far as your marriage to [J.B's biological father], did you -- when you
were getting a divorce from him, did you accuse him of sexual assault of you
or the children? (10)

 

 A. During my divorce, did I accuse him?

 

 Q. During any time. At any time have you accused [J.B's biological father] of
any kind of sexual assault or inappropriate sexual behavior with you or
the children?

 

 A. Can you rephrase the question so I can understand it better, please?

 

 Q. Well, did you accuse [J.B's biological father], your now ex-husband, of any
inappropriate sexual behavior at any time?

 

 A. Of my children?

 

 Q. I said of any inappropriate sexual behavior at any time?

 

 A. Did I accuse him to him or to other people?

 

 Q. To anyone.

 

 A. I'm not really understanding the question, so. I have told [J.B's biological
father] that even though we were married, that if I tell him no, that he is still
raping me, but I've never told anybody else about it. We would argue about
that. He would say, I'm not raping you, you're my wife. And I told him, no,
if I tell you no, it is still considered rape, and the next time you do it, I will
call the cops and that's where it stopped.

 

 Q. Are you saying that you never accused him to anyone else of any kind of
sexual abuse of you or your children?


 A. That is correct.

 

 Q. You never accused him of sexually abusing your daughter?

 

 A. No.

 

 Q. Or your son --

 

 A. No.

 

 Q. -- to anyone else?

 

 A. No.

 

 Q. Never?

 

 A. Never.



Appellant maintains that he should have been allowed to ask the above questions to develop Rene's
motive to falsely accuse him in this case. Conceding that such motive to falsely accuse would not
be that of the victim but rather her mother, appellant nevertheless contends that because Rene was
the outcry witness, "her motivation to convince her daughter to falsely accuse him, demonstrated by
her prior actions, was both relevant and admissible."

 Except for criminal convictions, specific instances of conduct of a witness may not
be used to impeach the witness's credibility, either on cross-examination or by extrinsic evidence.
See Tex. R. Evid. 608(b); Billodeau, 277 S.W.3d at 39-40. Specific instances of conduct may,
however, be used to establish a witness's bias or interest. See Tex. R. Evid. 613(b). The court of
criminal appeals has observed that "there is an important distinction between an attack on the general
credibility of a witness and a more particular attack on credibility that reveals 'possible biases,
prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in
the case at hand.'" Hammer v. State, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009) (quoting Davis
v. Alaska, 415 U.S. 308, 316 (1973)); see Dixon v. State, 2 S.W.3d 263, 271 (Tex. Crim. App. 1999)
(op. on reh'g) ("Rule 608 addresses a witness's general character for truthfulness. Rule [613]
addresses a witness's trustworthiness in the particular case because of some bias or interest.").

 Further, while there is no per se exception to Rule 608(b) for sexual offenses, the
Sixth Amendment guarantees the right of an accused to confront the witnesses against him, and the
Confrontation Clause may occasionally require the admission of evidence that the rules of evidence
would exclude. Lopez v. State, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000). Still, under the
Confrontation Clause, a trial court maintains broad discretion to impose reasonable limits on
cross-examination or impeachment to avoid harassment, prejudice, confusion, and the injection of
cumulative or collateral evidence. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); Lopez,
18 S.W.3d at 222; Delamora v. State, 128 S.W.3d 344, 364 (Tex. App.--Austin 2004, pet. ref'd). 
Thus, in deciding whether evidence must be admitted under the Confrontation Clause, it is necessary
to balance the probative value of the evidence sought to be introduced against the risk that its
admission may entail. Lopez, 18 S.W.3d at 222; Delamora, 128 S.W.3d at 365. In Lopez v. State,
the court of criminal appeals held that because the evidence failed to show that the prior accusation
was false or that the prior and current accusations were similar, the evidence failed to have any
probative value in impeaching the complainant. 18 S.W.3d at 226.

 In the present case, the trial court allowed defense counsel to make an offer of proof
during which counsel questioned Rene about accusing her former husband of sexually abusing her
and her children. While appellant asserts in his brief that Rene "admitted the accusations against her
ex-husband," the record does not reflect such an admission. In fact, her testimony--the only
evidence in the record relating to this purported prior accusation--contains a complete denial that
such an accusation was ever made. Appellant presented no competent evidence that any such
allegations were actually made. Further, even if we construe Rene's testimony as some sort of
admission to making an accusation against her ex-husband, as appellant does, there is no evidence
in the record that such an allegation, if made, was false. Thus, the evidence lacks probative value
because appellant presented no evidence that any previous allegations of sexual abuse were actually
false. See id. (requiring proof of falsity before evidence of prior abuse allegations can be probative).

 Moreover, even if appellant had presented proof of falsity, he fails to demonstrate any
similarity between the previous accusation of sexual abuse and the current allegations against
appellant. Appellant presents no evidence linking the two allegations. Assuming the record shows
such a prior allegation, the record shows only that the prior allegation by Rene and the current
allegations by J.B. were made. Rene's accusation concerned sexual abuse against her by her former
husband, whereas J.B.'s allegations concerned sexual abuse by appellant. Unrelated allegations of
sexual abuse to different victims by different perpetrators--particularly an allegation of forced
nonconsensual sex with an adult woman and allegations of engaging in various sexual acts with a
child--do not constitute a pattern of behavior sufficient to satisfy the similarity requirement
identified in Lopez. See id. (complainant's prior accusation of physical abuse by mother and current
allegation of sexual abuse by defendant did not have requisite similarity).

 Appellant fails to meet the conditions set forth in Lopez. There is no proof in the
record that Rene's prior accusation of sexual abuse perpetrated by her ex-husband, if made, was both
false and similar in nature to the offenses with which appellant was charged. Accordingly, his
Confrontation Clause challenge fails.

 Concerning the alleged violation of Rule 613(b), while appellant asserts in his brief
that the evidence of the prior false allegation should have been admitted to show Rene's bias against
appellant as well as her motive to falsely accuse him and encourage her daughter to do likewise, he
fails to explain how evidence of a prior false allegation concerning her ex-husband's sexual assault
against her reveals her bias against appellant. Nor does he explain how the prior accusation provides
a motive to falsely accuse appellant of sexually abusing her daughter or encourage her daughter to
falsely accuse him. Appellant testified at trial that he told Rene that he was going to leave her and
return to his ex-wife. He asserts in his brief that this testimony provided a motive for Rene to falsely
accuse appellant of sexually assaulting her daughter. However, he fails to explain how Rene's
purported false accusation against her ex-husband relates to this motive created by appellant's intent
to leave. There is no evidence in the record suggesting that Rene's purported accusation against her
former husband resulted from her husband's leaving or threatening to leave her. Contrary to
appellant's assertion, the proffered testimony here does not show a bias against him or a motive to
falsely accuse him. Rather, it constitutes an impermissible attack on Rene's general credibility using
specific instances of conduct. We discern no violation of Rule 613(b).

 For the foregoing reasons, we hold that the trial court did not abuse its discretion in
excluding the evidence of Rene's purported prior false accusations of sexual abuse. We overrule
appellant's first point of error.


Alternative Sources of Sexual Knowledge

 In his second point of error, appellant argues that the trial court erred in excluding
evidence demonstrating alternative sources for J.B.'s sexual knowledge. During trial, appellant
sought to admit, through cross-examination of J.B.'s mother, evidence that J.B. had been exposed
to a registered sex offender, that J.B. had been involved in "inappropriate sexual conduct" with
another child, and that J.B.'s little brother had exposed himself to another child. He maintains that
this evidence "of other exposures to inappropriate sexual conduct and actual sex offenders" would
"explain her knowledge of sexual matters" and would have lessened the credibility of the victim
stemming from her sexual knowledge. In his brief, appellant does not specifically argue a legal basis
for the admission of the evidence, but suggests that the exclusion of this evidence violated his
constitutional rights to confrontation and due process.



Contact with Registered Sex Offender

 Rene testified during the offer of proof that for "a couple of weeks" in February 2010,
more than a year after Rene walked in on appellant with her daughter, J.B. had "been around" a
registered sex offender. There is nothing in the record describing the extent of the contact between
J.B. and this man. Nor is there any evidence demonstrating that J.B. gleaned any type of sexual
knowledge from him or from being around him. Appellant merely speculates that simple proximity
to a registered sex offender may have imparted sexual knowledge to J.B.

 Moreover, J.B.'s contact with the registered sex offender occurred well after the
allegations in the instant case. Relevant evidence is evidence that has any tendency to make the
existence of any fact of consequence to the determination of the action more or less probable than
it would be without the evidence. Tex. R. Evid. 401. If the evidence is not relevant, it is not
admissible. Id. 402. In deciding whether evidence is relevant, a trial court should ask whether a
reasonable person, with some experience in the real world, would believe the evidence is helpful in
determining the truth or falsity of any fact that is of consequence to the case. Hernandez v. State,
327 S.W.3d 200, 206 (Tex. App.--San Antonio 2010, pet. ref'd) (citing Montgomery, 810 S.W.2d
at 376). Because the contact with this individual happened after the sexual abuse alleged in this case,
the contact has no specific relevance to J.B.'s sexual knowledge before her relationship with
appellant or her outcry of the abuse. See Hernandez, 327 S.W.3d at 206 (photograph of victim with
boyfriend and caption with vague sexual content that was taken and posted on MySpace page after
solicitation by appellant had no specific relevance to victim's knowledge of sexual terms before her
encounter with appellant).

 We conclude that this evidence does not demonstrate a relevant alternative source of
sexual knowledge. Thus, the trial court did not abuse its discretion in refusing to admit it, and its
exclusion did not violate appellant's constitutional rights. See Tex. R. Evid. 402 ("Evidence
which is not relevant is inadmissible."); see also Hale v. State, 140 S.W.3d 381, 396 (Tex.
App.--Fort Worth 2004, pet. ref'd) (Constitution requires admission only of otherwise relevant and
admissible evidence).


Prior Sexual Conduct of Victim

 Appellant further complains about the exclusion of evidence that J.B. was involved
in "inappropriate sexual conduct" with another child. During the offer of proof, Rene testified that
on one occasion she observed appellant's daughter, M.L., on top of J.B. "humping" her. M.L.
explained to Rene that she learned this behavior from videotapes her cousin had shown her. Rene
further testified that on another occasion she observed M.L. under the bed asking J.B. to take off her
clothes. Rene's testimony reflected that these incidents occurred during the summer of 2008.

 The exclusion of a victim's prior sexual history has generally been held not to violate
a defendant's confrontation and cross-examination rights. See Allen v. State, 700 S.W.2d 924,
930-31 (Tex. Crim. App. 1985) (recognizing that "[t]here have been numerous attacks upon the
so-called rape shield statutes as violative of the Sixth Amendment and these generally have been
rejected" because "'the right to confront and to cross-examine is not absolute and may, in appropriate
cases, bow to accommodate other legitimate interests in the criminal trial process'") (quoting North
Carolina v. Fortney, 269 S.E.2d 110, 113 (N.C. 1980)). Rule 412(b) of the Texas Rules of Evidence
provides that specific instances of a sexual-assault victim's past sexual conduct are inadmissible
unless (1) the evidence falls within one of five categories of evidence listed in the rule, and (2) the
trial court finds that the probative value outweighs the danger of unfair prejudice. See Tex. R. Evid.
412(b)(2), (3). One of the exceptions listed in the rule is that the evidence is constitutionally
required to be admitted. Id. 412(b)(2)(E). However, the Constitution requires only the admission
of otherwise relevant and admissible evidence. Hale, 140 S.W.3d at 396. Thus, before evidence of
an alleged victim's sexual behavior may be admitted under rule 412(b)(2)(E), the defendant must
first establish the relevance of the evidence to a material issue in the case. Id.; see Tex. R. Evid. 401. 
If the evidence of the victim's prior sexual behavior is not relevant, it is properly excluded. See Tex.
R. Evid. 402. To show the relevance of a child victim's prior sexual conduct as an alternate source
of sexual knowledge, the defendant must establish that the prior acts clearly occurred and that the
acts so closely resembled those of the present case that they could explain the victim's knowledge
about the sexual matters in question. Hale, 140 S.W.3d at 396.

 Here, the prior sexual behavior involved a seven-year-old girl "humping" J.B. while
both girls were fully clothed and, on another occasion, that same child asking J.B. to remove her
clothes. Other than J.B.'s involvement, there is no similarity between these incidents and the
allegations against appellant in this case. Appellant fails to explain how, from these incidents with
M.L., J.B. gained knowledge about the anatomy of an adult male, male masturbation, ejaculation,
male-to-female genital contact, penile-vaginal sexual intercourse, or oral sex. Neither of these
incidents explain J.B.'s ability to provide detailed descriptions of the sexual abuse alleged.

 Appellant failed to establish the relevance of this evidence to a material issue in the
case so as to justify admission of this evidence under Rule 412(b)(2)(E). He did not prove that the
acts so closely resembled the acts alleged against him that they could explain J.B.'s knowledge about
the sexual matters in question. Accordingly, we conclude that this evidence was not relevant. The
trial court did not abuse its discretion in refusing to admit it, and its exclusion did not violate
appellant's constitutional rights. See Tex. R. Evid. 402; see also Hernandez, 327 S.W.3d at 206;
Hale, 140 S.W.3d at 396.


Incident with Victim's Brother

 During the offer of proof, Rene testified about a CPS investigation relating to an
incident where J.B.'s younger brother, C.B., and another young boy "were in a closet looking at each
other's private parts" when they were six or seven years old. She explained that CPS "ruled out the
cases," finding that the parents responded to the incident appropriately and because that was normal
behavior for boys in that age group. Her testimony does not reflect that J.B. was in any way involved
in the incident.

 Appellant complains about the exclusion of this evidence because it "shows a number
of irregularities in the entire . . . household regarding the proper sexual behavior of prepubescent
children" and inappropriate behavior by another of Rene's children. However, the evidence in the
record reflects that this was not abnormal behavior on the part of C.B., but rather normal behavior
for a child of that age. Moreover, appellant wholly fails to explain how an incident where C.B. and
another young boy comparing "private parts"--an incident which did not involve J.B.--contributed
to J.B.'s sexual knowledge. The record does not demonstrate that J.B. was even aware of the
incident. Furthermore, little boys comparing private parts is not similar to the sexual acts charged
against appellant. This evidence was simply not relevant. Therefore, we conclude that the trial court
did not abuse its discretion in refusing to admit it and its exclusion did not violate appellant's
constitutional rights. See Tex. R. Evid. 402; see also Hernandez, 327 S.W.3d at 206; Hale,
140 S.W.3d 381, 396.

 For the foregoing reasons, we hold that the trial court did not abuse its discretion in
excluding the evidence of alleged alternative sources for J.B.'s sexual knowledge. We overrule
appellant's second point of error.


Expert Testimony

 In his third point of error, appellant asserts that the trial court erred in admitting the
testimony of William Lee Carter, a licensed psychologist, because there was no evidence of the
scientific validity of his opinions regarding the dynamics of child sexual abuse.


Testimony of Dr. Carter

 During the guilt-innocence phase of trial, Dr. Carter testified, based on his education,
training, and experience, about the dynamics of child sexual abuse. Dr. Carter had obtained
bachelors, masters, and doctoral degrees in psychology, all from Baylor University. At the time of
trial, Dr. Carter had been a licensed psychologist for 27 years and had specialized in the dynamics
of child sexual abuse through work experience and training. At one point during his career, he
assisted in the development of a program specifically for the treatment of sexual abuse victims. In
addition, he has authored eight books, including a workbook for sexual abuse victims. Dr. Carter
related that he was a member of various local, state, and national psychological associations and
obtained a speciality certification in the area of psychological evaluation and assessment. He
testified that the sub-field of child sexual abuse dynamics is a subject well established in the field
of psychology. He indicated that he had testified in court as an expert witness "a couple hundred
times" in courtrooms across 15 to 20 Texas counties.

 Dr. Carter's practice included the treatment of hundreds of victims of sexual abuse,
children and teenagers. In addition, during the course of his career, he has conducted hundreds of
psychological evaluations of sex offenders. Thus, the evidence demonstrated that he gained
knowledge and experience regarding the dynamics of child sexual abuse from the perspective of both
child victims as well as perpetrators.

 Dr. Carter testified about the dynamics of child sexual abuse and several areas of
concern related to the sexual assault of children: the process of disclosure of abuse by victims, also
known as "outcry"; common psychological reactions to sexual abuse, including typical emotions
experienced, behaviors exhibited, and coping or defense mechanisms employed; the relationship
between perpetrators and victims that enables sexual abuse; victim selection by perpetrators; and
conditioning or grooming practices associated with the sexual assault of children. His testimony
addressed these issues in his answers to hypothetical questions based on trial evidence. Dr. Carter
did not know J.B., her mother, or appellant.


Standard of Review

 The admission of expert testimony is reviewed on appeal for an abuse of discretion. 
Coble v. State, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). A trial court's ruling on
the admissibility of expert testimony will rarely be disturbed by an appellate court. Vela v. State,
209 S.W.3d 128, 136 (Tex. Crim. App. 2006); Rodgers v. State, 205 S.W.3d 525, 527-28 n.9 (Tex.
Crim. App. 2006). As with other types of evidentiary rulings, we will uphold the trial court's
decision unless it lies outside the zone of reasonable disagreement. Layton v. State, 280 S.W.3d 235,
240 (Tex. Crim. App. 2009) (citing Montgomery, 810 S.W.2d at 380). If the record supports the trial
court's decision on the admission of evidence, there is no abuse of discretion. Osbourn v. State,
92 S.W.3d 531, 537 (Tex. Crim. App. 2002); Montgomery, 810 S.W.2d at 379; Marsh v. State,
343 S.W.3d 475, 478 (Tex. App.--Texarkana 2011, pet. ref'd).


Reliability of Dr. Carter's Opinions

 Pursuant to Rule 702, before admitting expert testimony, the trial court must be
satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his
knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is
appropriate for expert testimony; and (3) admitting the expert testimony will actually assist the
fact-finder in deciding the case. Vela, 209 S.W.3d at 131; see also Jackson v. State, 17 S.W.3d 664,
670 (Tex. Crim. App. 2000). These conditions are commonly referred to as (1) qualification,
(2) reliability, and (3) relevance. Vela, 209 S.W.3d at 131. Reliability focuses on the subject matter
of the witness's testimony. The proponent of the expert testimony must demonstrate by clear and
convincing evidence that the expert testimony is reliable. Russeau v. State, 171 S.W.3d 871, 881
(Tex. Crim. App. 2005). The focus of the reliability analysis is to determine whether the evidence
has its basis in sound scientific methodology such that testimony about "junk science" is weeded out. 
Tillman, 354 S.W.3d at 435; Jordan v. State, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996). When
addressing fields of study outside the hard sciences, such as the social sciences or fields that are
based primarily on experience and training as opposed to the scientific method, the requirement of
reliability still applies, but with less rigor than to the hard sciences. Nenno v. State, 970 S.W.2d 549,
561 (Tex. Crim. App. 1998), overruled on other grounds by State v. Terrazas, 4 S.W.3d 720 (Tex.
Crim. App. 1999); Perez v. State, 113 S.W.3d 819, 833 (Tex. App.--Austin 2003, pet. ref'd),
overruled on other grounds by Taylor v. State, 268 S.W.3d 571 (Tex. Crim. App. 2008).

 The field of psychology is a "soft science." See Tillman, 354 S.W.3d at 435; Perez,
113 S.W.3d at 833-34. Consequently, to establish its reliability, the proponent of expert testimony
in that field must establish that: (1) the field of expertise involved is a legitimate one, (2) the subject
matter of the expert's testimony is within the scope of that field, and (3) the expert's testimony
properly relies on or utilizes the principles involved in that field. Tillman, 354 S.W.3d at 435-36
(citing Nenno, 970 S.W.2d at 561); Davis v. State, 329 S.W.3d 798, 814-15 (Tex. Crim. App. 2010). 
This analysis is "'merely an appropriately tailored translation of the Kelly test to areas outside of hard
science.'" (11) Tillman, 354 S.W.3d at 435-36 (quoting Nenno, 970 S.W.2d at 561). The general
principles announced in Kelly apply, but the specific factors outlined may or may not apply
depending on the context. Coble, 330 S.W.3d at 273 (citing Nenno, 970 S.W.2d at 560). The
methods of proving reliability in the soft sciences will vary, depending on the field of expertise. 
Nenno, 970 S.W.2d at 561; Perez, 113 S.W.3d at 833-34.

 Psychology is a legitimate field of study. See Tillman, 354 S.W.3d at 436; Perez,
113 S.W.3d at 834. The subject of the dynamics of child sexual abuse is a legitimate subject within
the field of psychology. See Duckett v. State, 797 S.W.2d 906, 917 (Tex. Crim. App. 1990),
overruled on other grounds by Cohn v. State, 849 S.W.2d 817 (Tex. Crim. App. 1993) (expert
testimony concerning child-sexual-abuse syndrome and applying elements of syndrome to facts of
case was properly admitted); cf. Nenno, 970 S.W.2d at 562 (behavior of people who sexually
victimize children is legitimate field of expertise); Morris v. State, 361 S.W.3d 649, 656 (Tex. Crim.
App. 2011) (conditioning or grooming practices associated with sexual assault of children is
legitimate field of study). Accordingly, courts have repeatedly upheld the admission of expert
testimony concerning behavioral characteristics exhibited by children that have been empirically
shown to be common among children who have been abused. See Cohn v. State, 849 S.W.2d 817,
819 (Tex. Crim. App. 1993); DeLeon v. State, 322 S.W.3d 375, 382-83 (Tex. App.--Houston [14th
Dist.] 2010, pet. ref'd); Reyes v. State, 274 S.W.3d 724, 729 (Tex. App.--San Antonio 2008, pet.
ref'd); Perez, 113 S.W.3d at 832.

 Appellant complains that there was "no evidence provided that the methodology
[Dr. Carter] used in this case is supported by independent research, books, journals, articles, or other
psychologists." We find no requirement, however, that a field of expertise must specifically
incorporate research, scientific study, or empirical data. See, e.g., Morris, 361 S.W.3d at 656. 
Further, the expert testimony at issue here involved the field of psychology, a so-called "soft science"
based primarily upon experience and training. See State v. Medrano, 127 S.W.3d 781, 785 (Tex.
Crim. App. 2004) (citing Nenno, 970 S.W.2d at 561). Thus, rather than the "methodology used,"
the more appropriate inquiry is whether the testimony properly relied on or utilized the principles
involved in the field of psychology. See Tillman, 354 S.W.3d at 435-36; see also Nenno, 970
S.W.2d at 562. All of the opinions offered by Dr. Carter were within the scope of the field of
psychology. His opinions, founded on general psychological principles, were based on his extensive
experience during the course of his career observing and treating hundreds of sexually abused
children and evaluating hundreds of sex offenders, as well as his continuing education and
specialized study in the area of child sexual abuse.

 Appellant does not identify "principles involved in the field" of psychology that Dr.
Carter's testimony failed to rely on or utilize. Instead, he relies on Coble v. State to support his
position that there was "no evidence of scientific validity to any of Dr. Carter's opinions regarding
the dynamics of child sexual abuse." In Coble, the court of criminal appeals held that the expert
testimony was not reliable because it was unclear what principles of forensic psychiatry the expert
might have relied upon, pointing out that the expert witness "cited no books, articles, journals, or
even other forensic psychiatrists who practice in this area." Coble, 330 S.W.3d at 278-79. We do
not read this holding as establishing a requirement that expert testimony must always refer to or rely
on publications or other professionals in the field. The only requirement is that the expert's
testimony properly relies on or utilizes the principles involved in the particular field.

 Here, the specific principles of psychology relied on by Dr. Carter were sufficiently
clear. For example, he detailed the psychological reasons for delayed outcry by abuse victims and
the ongoing process of disclosure. He also described the psychological factors involved in victim
selection and explained how the psychological relationship between the perpetrator and the victim
enables sexual abuse. He applied his specialized knowledge and experience and psychological
principles to various hypothetical scenarios, describing his reasoning clearly throughout. From his
testimony, it is clear that Dr. Carter was applying the general principles of psychology to the area of
child sexual abuse. The record reflects that, unlike the expert in Coble, Dr. Carter relied on and
utilized the principles in the relevant area of psychology.

 We conclude that Dr. Carter's testimony was reliable. Accordingly, the trial court
did not abuse its discretion in admitting the complained-of testimony over appellant's objection. 
Appellant's third point of error is overruled.


Admission of Hearsay Statements

 Appellant complains in his fourth point of error that the admission of hearsay
statements of J.B. and her mother through the testimony of J.B.'s pediatrician and the SANE nurse
violated his right to confrontation. He further argues that the admission of these statements was
"improper bolstering."


Preservation Issues

 At trial, the prosecutor questioned J.B.'s pediatrician about statements J.B.'s mother
made to her when she brought J.B. in to be examined, offering the statements as excited utterances. 
 See Tex. R. Evid. 803(2). Appellant objected on the grounds that the evidence was hearsay, too
remote to constitute an excited utterance, and that the proper predicate had not been laid. He
subsequently further objected to double hearsay. The prosecutor also asked the doctor about
statements J.B. made to her, offering them as statements made for the purpose of medical diagnosis
or treatment. See id. 803(4). Appellant objected to that testimony on the grounds that the evidence
was hearsay and the proper predicate was lacking. At no point did appellant object to any of the 
pediatrician's testimony on the grounds of lack of confrontation or improper bolstering. 
Accordingly, as to any complaints about the admission of hearsay statements through the
pediatrician's testimony, appellant has failed to preserve error and has forfeited the right to complain
on appeal. See Tex. R. App. P. 33.1(a) (to preserve complaint for appellate review, party must have
presented specific and timely request, motion, or objection to trial court and, further, must have
obtained adverse ruling); see also Pena v. State, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011);
Peavey v. State, 248 S.W.3d 455, 470 (Tex. App.--Austin 2008, pet. ref'd).

 During the testimony of the SANE nurse, the State offered the medical records of the
SANE exam. Appellant objected to "hearsay and not a properly authenticated business record,
improper bolstering, and denial of confrontation under the United States Constitution Sixth
Amendment." Thus, as to the medical records and any hearsay statements contained therein,
appellant preserved his confrontation and improper bolstering complaints for appellate review. 
However, when the prosecutor asked the nurse what J.B. told her during the interview portion of the
SANE exam, appellant objected to "hearsay and confrontation." He did not object to the nurse's
testimony on the ground of improper bolstering. Accordingly, as to any complaints that the
admission of J.B.'s hearsay statements through the nurse's testimony constituted improper
bolstering, appellant has failed to preserve error and has forfeited the right to raise that complaint
on appeal. See Tex. R. App. P. 33.1(a); see also Pena, 353 S.W.3d at 807; Peavey, 248 S.W.3d at
470. He did, however, properly preserve his complaint that the admission of J.B.'s hearsay
statements to the SANE nurse violated his right of confrontation.


Confrontation

 The Confrontation Clause of the Sixth Amendment provides a right in both federal
and state prosecutions to confront and cross-examine adverse witnesses. U.S. Const. amends. VI,
XIV; Pointer v. Texas, 380 U.S. 400, 406 (1965); Woodall v. State, 336 S.W.3d 634, 641 (Tex.
Crim. App. 2011). The principal concern of the Confrontation Clause is to ensure the reliability of
the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an
adversary proceeding before the trier of fact. Maryland v. Craig, 497 U.S. 836, 845 (1990).

 To implicate the Confrontation Clause, an out-of-court statement must (1) have been
made by a witness absent from trial, and (2) be testimonial in nature. Crawford v. Washington, 541
U.S. 36, 50-52, 59 (2004); Woodall, 336 S.W.3d at 641-62; Jessop v. State, 368 S.W.3d 653, 680
(Tex. App.--Austin 2012, no pet.). It is the "literal right to 'confront' the witness at the time of trial
that forms the core of the values furthered by the Confrontation Clause." California v. Green,
399 U.S. 149, 157 (1970). Thus, the holding in Crawford applies only when a party seeks to offer
the extrajudicial testimonial statements of a witness who does not testify at trial. See Crawford,
541 U.S. at 59; Jessop, 368 S.W.3d at 680. When the declarant appears for cross-examination at
trial, the Confrontation Clause places no constraints at all on the use of prior testimonial statements. 
Crawford, 541 U.S. at 59 n.9; Green, 399 U.S. at 162; Woodall, 336 S.W.3d at 641-62; see, e.g.,
Eustis v. State, 191 S.W.3d 879, 886 (Tex. App.--Houston [14th Dist.] 2006, pet. ref'd); Hanson
v. State, 180 S.W.3d 726, 731 (Tex. App.--Waco 2005, no pet.); Crawford v. State, 139 S.W.3d
462, 465 (Tex. App.--Dallas 2004, pet. ref'd).

 In this case, J.B. testified at trial and was subject to cross-examination. Appellant did
in fact have the opportunity to confront her as a witness. Accordingly, we discern no violation of
appellant's confrontation rights. (12) We overrule appellant's fourth point of error insofar as it relates
to his complaint about the violation of his right to confrontation.


Bolstering

 Bolstering has been defined as "any evidence the sole purpose of which is to convince
the factfinder that a particular witness or source of evidence is worthy of credit, without
substantively contributing 'to make the existence of a fact that is of consequence to the determination
of the action more or less probable than it would be without the evidence.'" (13) Rivas v. State,
275 S.W.3d 880, 886 (Tex. Crim. App. 2009) (quoting Cohn, 849 S.W.2d at 819). However,
bolstering occurs only when evidence is improperly used by a party to add credence or weight to
some earlier unimpeached piece of evidence. Cohn, 849 S.W.2d at 819; see Valcarcel v. State,
765 S.W.2d 412, 415 (Tex. Crim. App. 1989) (agreeing with appellate court's holding that because
officer was first witness to testify, his testimony regarding "drug courier profile" could not have been
used to bolster second officer's later testimony); Hyde v. State, 869 S.W.2d 660, 663 (Tex.
App.--Beaumont 1994, no pet.) ("[I]mproper 'bolstering' does not occur when the alleged
'bolstering' takes place before the unimpeached witness has had a chance to testify.") (emphasis in
original).

 Here, the SANE nurse testified before J.B. testified. It was during her testimony that
the medical records from the SANE exam were admitted. Thus, neither her testimony nor the
medical records could have bolstered J.B.'s later testimony. We overrule appellant's fourth point
of error insofar as it relates to his complaint about improper bolstering.


Punishment Evidence

 In his final point of error, appellant contends that the trial court erroneously admitted
digital evidence, including pornographic images and video files, during the punishment phase of
trial. He argues the evidence was inadmissible because it was not sufficiently linked to him.



The Digital Evidence

 During the punishment phase of trial, the trial court admitted digital evidence
recovered by a computer forensics analyst from the desktop computer and various electronic storage
devices removed from the apartment appellant shared with Rene and her children. The analyst
testified about the following digital evidence recovered from these items:



 On the desktop computer, the analyst found 12 images of child pornography,
some LimeWire information of interest, and Internet history of interest. The
recovered images all depicted prepubescent females. (14)


 


 On a one-gigabyte thumb drive, the analyst found 11 images of
child pornography that were saved to the memory device between
December 26, 2008, and January 3, 2009. These images all depicted
prepubescent females.


 


 On one of the CDs in a collection of 13 CDs, the analyst found seven "very
graphic" videos of child pornography. These videos depicted adults engaging
in various sexual acts with children, including oral sex, adult males
ejaculating on children, and penile-vaginal intercourse. The file names of
these videos contained known child pornography terms.


 


 On a two-gigabyte thumb drive, the analyst found a 17-minute home video
of an adult male masturbating with a vacuum cleaner. (15) Also on that memory
device, the analyst found three images with "questionable" content, meaning
he was unable to determine the age of the children depicted in the
pornographic images.




 In his brief, appellant complains about the admission of "many images and files that
contained child pornography that were found on the computer in the home in which Appellant
resided." As noted above, however, not all of the images and video files were recovered solely from
the computer. For purposes of this discussion, we will assume appellant's complaint encompasses
all of the digital evidence admitted during the punishment phase, not only the images found on the
desktop computer. (16)


Standard of Review

 We review a trial court's decision to admit punishment evidence under an
abuse-of-discretion standard. Davis, 329 S.W.3d at 802; Walters v. State, 247 S.W.3d 204, 217
(Tex. Crim. App. 2007). We may not disturb a trial court's evidentiary ruling absent an abuse of
discretion. McGhee v. State, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). The trial court abuses
its discretion only when its decision lies "outside the zone of reasonable disagreement." Davis,
329 S.W.3d at 802; Walters, 247 S.W.3d at 217. If the trial court's evidentiary ruling is correct on
any theory of law applicable to that ruling, we will uphold that decision. De La Paz v. State,
279 S.W.3d 336, 344 (Tex. Crim. App. 2009).


Admissibility Under Article 37.07

 Section 3(a) of article 37.07 of the Texas Code of Criminal Procedure governs the
admissibility of evidence at the punishment phase of a non-capital criminal trial and grants the trial
court broad discretion to admit evidence that the court deems relevant to sentencing. See Tex. Code
Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2012). Admissibility of evidence at the
punishment phase of a trial of a non-capital felony offense is a function of policy rather
than relevancy. Hayden v. State, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009); Come v. State,
82 S.W.3d 486, 491 (Tex. App.--Austin 2002, no pet.). In ascertaining what is relevant to
sentencing, the focus is on what is helpful to a jury in deciding an appropriate sentence for a
defendant. Sims v. State, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008); Come, 82 S.W.3d at 491.

 During the punishment phase of trial, the State may offer evidence as to any matter
the court deems relevant to sentencing, including evidence of an extraneous crime or bad act that is
shown beyond a reasonable doubt to have been committed by the defendant or for which he could
be held criminally responsible. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). When presented
with an appropriate objection, the trial court has the initial responsibility to determine the threshold
issue of whether an extraneous offense is admissible. See Mitchell v. State, 931 S.W.2d 950, 953
(Tex. Crim. App. 1996); Mann v. State, 13 S.W.3d 89, 94 (Tex. App.--Austin 2000), aff'd, 58
S.W.3d 132 (Tex. Crim. App. 2001). This threshold determination is not a finding by the trial court
that the State has proved an extraneous offense beyond a reasonable doubt, but is instead a finding
that sufficient evidence exists from which a jury could reasonably so find. See Mann, 13 S.W.3d at
94; Arzaga v. State, 86 S.W.3d 767, 781 (Tex. App.--El Paso 2002, no pet.); see also Smith v. State,
227 S.W.3d 753, 759-60 (Tex. Crim. App. 2007) ("Unless the extraneous misconduct evidence is
such that the [jury] can rationally find the defendant criminally responsible for the extraneous
misconduct, the trial court is not permitted to admit it at a punishment hearing."). The jury, as the
exclusive judge of the facts, must determine whether or not the State has proved the extraneous
conduct beyond a reasonable doubt. Mitchell, 931 S.W.2d at 954.

 Relying on cases applying the "affirmative links" rule in drug possession cases and
applying that rule to possession of child pornography, appellant maintains that the evidence in this
case fails to sufficiently link the complained-of digital evidence to him because it fails to
demonstrate beyond a reasonable doubt that the images and files were "downloaded, viewed, or used
by him." Appellant bases his argument on his assertions that the computer "belonged to [Rene]" and
"was accessible to [Rene], the children living in the home, and presumably any other reasonably
computer literate person who had spent some time in the home." However, while Rene testified that
she had the computer before appellant began living with her, ownership by one individual does not
necessarily preclude use or access by others. In fact, appellant admitted to using the computer. In
addition, we note that other than Rene and J.B., the record contains no evidence of any other
individuals using the computer. (17) We reject appellant's suggestion that ownership and exclusive
access are required to link the evidence to appellant.

 The record reflects that appellant, the only adult male in the apartment, had used the
computer in the past, had time in the apartment alone to use the computer when Rene was not home,
and had ready access to the computer and electronic storage devices on which the pornographic
evidence was found. However, this access was not the only evidence connecting appellant to the
pornographic evidence. J.B. indicated that appellant took digital videos of her on the camera and
then transferred them onto the computer. This is corroborated by the fact that deleted pornographic
video files and images of appellant and a young prepubescent girl whom the jury could reasonably
conclude was J.B. were recovered from the very camera appellant had in his hand when discovered
by Rene--a camera he refused to relinquish until after he returned from going outside the house. (18) 
In addition, the jury could reasonably conclude that the man masturbating in the 17-minute home
video with the vacuum cleaner, identified by the bracelet he wore and the chair he was sitting on,
was appellant. This video was stored on the same memory storage device as other pornographic
images. This home video, along with the evidence that appellant took videos of J.B. and transferred
them to the computer, shows that appellant had the technical knowledge to create and store digital
pornographic materials on electronic storage devices.

 Further, the children depicted in the complained-of images and video files were
similar to the age, body type, and developmental stage of J.B. These images and videos of young
prepubescent girls similar to J.B.--displayed in sexual positions and subjected to various sexual
acts--were found on multiple electronic devices in appellant's home. The jury had just convicted
appellant of sexually abusing J.B. See, e.g., Wise v. State, 364 S.W.3d 900, 907 (Tex. Crim. App.
2012) (jury could consider defendant's history of sexually assaulting children when deciding whether
he knowingly possessed child pornography on his computer). The evidence here showed that
appellant had engaged in various improper sexual acts with a young prepubescent girl when she was
seven and eight years old and that he also inappropriately recorded that child using a digital camera. 
This evidence demonstrated appellant's prurient sexual interest in children, his use of a digital
camera and computer to pursue that interest, and a predilection for child pornography.

 Whether an extraneous offense or bad act was established beyond a reasonable doubt
is a question of fact for the jury, not a preliminary question of admissibility for the trial court. 
Mitchell, 931 S.W.2d at 953; see Nanez v. State, 179 S.W.3d 149, 151-52 (Tex. App.--Amarillo
2005, no pet.). The trial court is not charged with determining whether the State has proven
extraneous conduct beyond a reasonable doubt. See Mitchell, 931 S.W.2d at 953; Nanez,
179 S.W.3d at 151-52. Rather, the trial court satisfies its gatekeeping responsibility by making an
initial determination that a jury could reasonably find beyond a reasonable doubt that the defendant
committed the extraneous offense. Mann, 13 S.W.3d at 94; see Mitchell, 931 S.W.2d at 954. From
the evidence noted above, the trial court could have reasonably concluded that there was sufficient
circumstantial evidence from which a jury could conclude beyond a reasonable doubt that appellant
downloaded, viewed, used, possessed, or accessed the complained-of digital evidence. (19)

 Moreover, at the punishment phase of trial, relevant evidence is that which assists the
fact finder in determining the appropriate sentence for a particular defendant in a particular case. 
Hayden, 296 S.W.3d at 552 (citing Rogers v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)). 
Relevant evidence is not limited to evidence of other crimes or bad acts, nor is it limited to the
circumstances of the offense. Rather, article 37.07 provides for the admission of any matter the court
deems relevant to sentencing. See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). The trial court
has broad discretion in determining admissibility of evidence at the punishment phase of trial. Cooks
v. State, 844 S.W.2d 697, 735 (Tex. Crim. App. 1992). Here, the jury had just convicted appellant
of sexually abusing a young prepubescent girl whom he had also inappropriately digitally recorded. 
The complained-of evidence revealed that he lived in an apartment where pornographic images and
videos of young prepubescent girls--similar to the child he sexually abused--were found on
multiple electronic devices. The trial court could have concluded that appellant's proximity to such
materials in his home--materials that, at a minimum, he had access to--was relevant information
for the jury. (20) Thus, the trial court could have reasonably concluded that the complained-of digital
evidence was relevant to appellant's sentencing even if it did not constitute evidence of an
extraneous offense or bad act.

 For the above reasons, we cannot say the trial court abused its discretion in admitting
the complained-of digital evidence. Appellant's fifth point of error is overruled.


CONCLUSION

 We conclude that the trial court did not abuse its discretion by excluding evidence
of the purported prior false allegation of sexual abuse made by J.B.'s mother, excluding evidence
of alternative sources for J.B.'s sexual knowledge, admitting the testimony Dr. Carter, admitting the
hearsay statements of J.B., or admitting digital evidence of child pornography during the punishment
phase of trial. Accordingly, we affirm appellant's judgments of conviction.



 __________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Rose

Affirmed

Filed: October 19, 2012

Do Not Publish
1. In order to protect the identity of the child victim in this case and avoid confusion, we refer
to the victim using only her initials and refer to her mother, who shares the victim's last name, by
her first name.
2. The record reflects that the couch in question pulled out into a full-size bed. Rene testified
that it was not unusual for J.B. to sleep in the couch bed because she would fall asleep watching
a movie.
3. The evidence about why appellant accompanied them is disputed. Rene testified that it was
at her insistence, but appellant testified that it was his idea to take J.B. to the doctor.
4. The record reflects that the forensic interviewer demonstrated for the jury the motion that
J.B. showed him of how appellant "wiggled" his "private part."
5. The record reflects that J.B.'s date of birth is December 20, 2000. On the date of the
interview, January 13, 2009, she told the forensic interviewer that she was eight years old and in the
second grade.
6. The record reflects that after his initial refusal to give Rene the camera, appellant returned
it to her when he came back inside the house before they took J.B. to the doctor.
7. Rene testified that she was taking classes full time in the evening and was gone three to
four evenings a week.
8. Appellant was charged with the sexual abuse of J.B. in an eight-count indictment. Count
one alleged the offense of continuous sexual abuse of a young child. Counts two through six alleged
the offenses of aggravated sexual assault of a child and indecency with a child by sexual contact. 
These offenses were the underlying acts of sexual abuse contained in the continuous-sexual-abuse
count. The final two counts alleged indecency with a child by exposure. The jury was instructed
to proceed to consideration of the indecency-by-exposure counts if they found appellant guilty of
continuous sexual abuse of a young child as alleged in count one. Following the court's instructions,
the jury returned guilty verdicts on counts one, seven, and eight.
9. Appellant does not make this argument on appeal.
10. To protect the identity of the child victim in this case, we do not refer to her biological
father by name as he shares the same last name. To avoid confusion, we do not use his initials
because they are the same initials as the victim.
11. In Kelly v. State, the court of criminal appeals outlined several factors that could affect a
trial court's determination of reliability, including but not limited to: (1) the extent to which the
underlying scientific theory and technique are accepted as valid by the relevant scientific community,
if such a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the
existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the
potential rate of error of the technique; (5) the availability of other experts to test and evaluate the
technique; (6) the clarity with which the underlying scientific theory and technique can be explained
to the court; and (7) the experience and skill of the person(s) who applied the technique on the
occasion in question. Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).
12. As discussed previously, appellant raised his confrontation objection only to the medical
records of the SANE exam and the testimony of the SANE nurse. The record reflects that the only
hearsay statements made to the SANE nurse were made by J.B., not her mother. Nevertheless, we
note that J.B.'s mother also testified at trial and was subject to cross-examination. Thus, we likewise
discern no violation of appellant's confrontation rights in this regard.
13. As this Court has noted in previous opinions, there is some question as to whether
a "bolstering" objection preserves error. See Muniz-Luna v. State, No. 03-09-00266-CR,
2010 WL 3810820, at *3 n.4 (Tex. App.--Austin Sept. 30, 2010, pet. ref'd) (mem. op., not
designated for publication); Biddy v. State, No. 03-01-00182-CR, 2002 WL 533652, *2-3 (Tex.
App.--Austin Apr. 11, 2002, no pet.) (mem. op., not designated for publication). We recognize that
while "bolstering" was a proper objection in Texas courts prior to the adoption of the rules of
evidence, the rules themselves contain no specific provision regarding bolstering. See Cohn v. State,
849 S.W.2d 817, 821 (Tex. Crim. App. 1993) (Campbell, J., concurring) (arguing that bolstering
objection should no longer be recognized, because "an objection that certain evidence is 'bolstering'
in no way invokes the Rules or informs the trial court of the basis for exclusion under the Rules.");
see also Rivas v. State, 275 S.W.3d 880, 887 (Tex. Crim. App. 2009) (noting that "[m]any appellate
courts have cited the Cohn concurrence as authority to abandon 'bolstering' as a valid objection to
preserve error for review"). However, given our disposition of this point of error, we need not
address the continuing vitality of a "bolstering" objection in Texas.
14. Six of these images were the same images found on the one gigabyte thumb drive
discussed in the text. The analyst testified that LimeWire is peer-to-peer file sharing software that,
in his experience, is often used to download images and videos of child pornography. The Internet
history he described included 20 websites visited that were associated with child pornography. We
do not repeat the website names in this opinion. However, we note that, according to the analyst's
testimony, they contained known child pornography search terms such as "preteen," "young,"
"kiddie," "super-young," "bottoms," "pussy," "tits," "ass," "whore," "nudist," "XXX," "PTHC"
(preteen hardcore), "PEDO" (pedophile), "video," "photos," and "pics."
15. The male in this video, whose face was not shown, was sitting on a chair that was similar
in style to a chair depicted in photographs of appellant's apartment. In addition, the man was
wearing a linked black and silver bracelet similar in appearance to a bracelet admitted into evidence
in the guilt-innocence phase. The record reflects that this bracelet was removed from appellant by
law enforcement officials when they arrested him for sexually abusing J.B. the day after the incident
Rene interrupted. In his testimony, appellant acknowledged ownership of the bracelet. Rene
testified that she had given the bracelet to appellant as a Christmas gift in 2008. The bracelet also
appeared to be the same as the bracelet shown in the deleted video files recovered from the Kodak
camera that had been admitted at the guilt-innocence phase of trial.
16. The record reflects that appellant requested, and the trial court granted, a running objection
to the analyst's "testimony about this, those images." Thus, we conclude that his objection at trial
incorporated all of the digital evidence about which the analyst testified during punishment.
17. Rene testified that she used the computer for basic things such as spreadsheets, typing
documents and papers for school, checking her Facebook and emails, and live video conferencing
with her colleagues. In response to the prosecutor's question about things she liked to do, J.B.
testified that she liked to "play on [her] mom's computer and do homework and color." One could
assume that the other two children living in the home had access to the computer as well. However,
no evidence in the record reflects that either the 12-year-old or the six-year-old used the computer. 
Nor is there any evidence that any one else spent time in the apartment or used the computer.
18. A reasonable inference from the evidence is that appellant recorded himself and J.B. with
the camera when they were on the couch bed that morning, just as J.B. testified, and then deleted the
videos when he left the house before returning the camera to Rene. In addition to J.B.'s testimony
about appellant taking pictures of her that morning, Rene witnessed appellant with the camera in his
hand when he was sitting next to her daughter who was naked from the waist down. Further, the
deleted video files from that camera--created that morning--depicted a young prepubescent girl
with a build similar to that of J.B. as well as pillows and bedding consistent with the pillows and
bedding of the couch bed where Rene discovered appellant with her daughter. 
19. The jury, as the exclusive judge of the facts, is entitled to weigh and resolve conflicts in
the evidence and draw reasonable inferences therefrom. Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007); see Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). It is within the province
of the fact finder to choose which inference is most reasonable. See Laster v. State, 275 S.W.3d 512,
523 (Tex. Crim. App. 2009). Further, circumstantial evidence is as probative as direct evidence. 
See Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). As with any question of
circumstantial evidence and inference, "'the jurors are free to use their common sense and apply
common knowledge, observation, and experience gained in the ordinary affairs of life when giving
effect to the inferences that may reasonably be drawn from the evidence.'" Boston v. State,
No. 03-10-00399-CR, 2012 WL 2509798, at *3 (Tex. App.--Austin June 27, 2012, pet. filed)
(quoting Obigbo v. State, 6 S.W.3d 299, 306 (Tex. App.--Dallas 1999, no pet.)).
20. The trial judge implicitly recognized the reasonableness of an even stronger inference
when she excluded the evidence of the child pornography video files recovered from the computer
in the State's rebuttal case. The trial court noted that the fact that appellant was the one who viewed
the child pornography was "something that you could assume," but, concerned about the link
between appellant and the video files, felt that it was not admissible at that point to rebut appellant's
testimony that he could not engage in sexual misconduct with a child. She did, however, explicitly
acknowledge that the evidence might be admissible at punishment.